National Docks R. R. Co. *v.* Central R. R. Co.

THE NATIONAL DOCKS RAILWAY COMPANY and others, appellants,

*v.*

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY and others, respondents.

1. When a corporation exists *de facto*, the court of chancery cannot, at the instance of private parties, restrain its operations upon the ground that its organization is not *de jure*. In such case the proper remedy is by *quo warranto*, or information in the nature thereof, instituted by the attorney-general.

2. The general railroad law, in respect to the delegation of the power of eminent domain to corporations organized under it, is constitutional.

3. Railroads, constructed under the general railroad law, become, *ipso facto*, public, because the public have the right of passage thereon by paying reasonable and uniform tolls, and that, regardless of the motives of their projectors or the generality of their probable use.

4. The general railroad law authorizes the organization of a company to build a railway wholly within one city.

5. A preliminary injunction should not be granted, when the right on which the complainant founds his claim, is, as a matter of law, unsettled.

Upon appeal from an order granting a preliminary injunction, reported in *Central R. R. Co.* v. *Penna. R. R. Co., 4 Stew. Eq. 475.*

*Mr. H. C. Pitney*, for the National Docks Railway Company, cited—

*State, M. & E. R. R. Co. pros.* v. *Hudson Tunnel Co., 9 Vr. 548; Tucker* v. *Freeholders, Sax. 282; Eden on Inj., \*14; 2 Story's Eq. Jur. 875; Kerr on Inj. \*13; Smithurst* v. *Edmunds, 1 McCart. 413; Angel* v. *Smith, 9 Ves. 335; Sutton* v. *Reese, 9 Jur. (N. S.) 456; Eyton* v. *D. R. & C. R. Co., L. R. (6 Eq.) 14; Russell* v. *E. A. R. Co., 3 MacN. & G. 104; Kerr on Fraud and Mistake 42; Perrine* v. *Farr, 2 Zab. 356; Allen* v. *Stevens,*

49

*5 Dutch. 509; Coster* v. *Tide Water Company, 3 C. E. Gr. 66; State, Atkinson pros.* v. *Bishop, 10 Vr. 226; Rugby Charity* v. *Merriweather, 11 East 375, n; Bateman* v. *Bluck, 18 Q. B. 870; Campbell* v. *Lang, 28 Eng. L. & Eq. 30; People* v. *Kingman, 24 N. Y. 560; People* v. *Van Alstyne, 3 Keyes 35; Mills on Em. Dom.* §§ *12, 13; Shaver* v. *Starrett, 4 Ohio St. 498; Talbot* v. *Hudson, 16 Gray 417; Edgewood R. R. Co.'s Appeal, 79 Pa. St. 257; Munn* v. *Illinois, 94 U. S. S. C. 113; Rensselaer & Sar. R. R. Co.* v. *Davis, 43 N. Y. 137; Black* v. *Del. & Rar. Co., 9 C. E. Gr. 455; Rar. & D. B. R. Canal Co.* v. *Del. & Rar. Co., 3 C. E. Gr. 546; M. & E. R. R. Co.* v. *Cen. R. R. Co., 2 Vr. 205, 213; N. Y. Cen. R. R.* v. *Gas Co., 63 N. Y. 326, 334; Matter of Townsend, 39 N. Y. 171; Hayward* v. *Mayor &c., 7 N. Y. 325; Cooley's Const. Lim. p. 538; Field on Corp.* § *440; Buffalo & N. Y. R. R.* v. *Brainard, 9 N. Y. 100; Weir* v. *St. Paul R. R. 18 Minn. 155; Secombe* v. *R. R. Co., 23 Wall. 108; People* v. *Smith, 21 N. Y. 595.*

*Mr. I. W. Scudder,* for Pennsylvania Railroad Company, cited—

*New Central Coal Co.* v. *George's Creek Coal & Iron Co., 37 Md. 539; Hayes* v. *Risher, 32 Pa. St. 169; Bankhead* v. *Brown, 25 Iowa 540; Harvey* v. *Thomas, 10 Watts (Pa.) 66; Messenger* v. *Penna. R. R. Co., 7 Vr. 410, 8 Vr. 535; Hughes* v. *Chester & Holyhead R. Co., 3 DeG. F. & J. 352; Mills on Em. Dom.* § *15; W. Va. Trans. Co.* v. *Oil Co., 5 W. Va. 382; Clarke* v. *Blackmar, 47 N. Y. (2 Sickles) 156; R. R. Com'rs* v. *Portland & Oxford Cen. R. R. Co., 63 Me. 269; New England Ex. Co.* v. *Me. Cen. R. R. Co., 57 Me. 188; 2 Shelford on Railways 790; Pierce on Am. R. R. Law 89; Northern R. R. Co.* v. *Miller, 10 Barb. 260; Moore* v. *Hudson River R. R. Co., 12 Barb. 156; Schenectady & Saratoga Plank Road Co.* v. *Thatcher, 11 N. Y. 102; Meadow Dam Co.* v. *Gray, 30 Me. 549; Sparrow* v. *Evansville & Crawfordshire R. R. Co. 7 Ind. 369; Att'y-Gen.* v. *Stevens, Sax. 371; Att'y-Gen.* v. *Utica Ins. Co., 2 Johns. Ch. 375; Att'y-Gen.* v. *The Bank of Niagara, Hopkins Ch. 409; Att'y-Gen.* v. *Earl*

National Docks R. R. Co. *v.* Central R. R. Co.

of *Clarendon, 17 Ves. 492; Updegraff* v. *Crans, 47 Pa. St. 103; People* v. *Saratoga & Rennsselaer R. R. Co., 15 Wend. 128; N. Y. Elevated R. R. Co. 70 N. Y. 327; Ewing* v. *City of St. Louis, 5 Wall. (U. S. Sup. Ct.) 413; M. & E. R. R. Co.* v. *Cen. R. R. Co., 2 Vr. 206; State, National Railway Co. pros.* v. *Easton & Amboy R. R. Co., 7 Vr. 186; State, The U. N. J. R. R. & C. Co. pros.* v. *The Com'rs of Railroad Taxation, 8 Vr. 240; Worcester* v. *Norwich & Worcester R. R. Co., 109 Mass. 114; State, M. & E. R. R. Co. pros.* v. *Haight, 6 Vr. 41; State, M. & E. R. R. Co. pros.* v. *Hudson Tunnel & R. R. Co., 9 Vr. 548; People* v. *Smith, 21 N. Y. 598.*

*Mr. J. D. Bedle,* for respondents, cited—

*R. & D. B. R. Co.* v. *D. & R. C. Co., 3 C. E. Gr. 546, 567; Penn. R. R. Co.* v. *Nat. R. R. Co., 8 C. E. Gr. 441; Hill* v. *Beach, 1 Beas. 31; Booth* v. *Wonderly, 7 Vr. 251; M. & E. R. R. Co.* v. *Sussex R. R. Co., 2 C. E. Gr. 543; Long Branch Com'rs* v. *W. E. R. R. Co., 2 Stew. Eq. 566; A. & O. R. R. Co.,* v. *Sullivant, 5 Ohio St. 278; D. L. & W. R. Co.* v. *Erie R. Co., 6 C. E. Gr. 299; Flower* v. *Lon. B. & S. C. R. Co., 11 Jur. (N. S.) 406; Buf. & N. Y. R. R.* v. *Brainard, 9 N. Y. 100; Bos. Water Co.* v. *B. & W. R. R. Co., 23 Pick. 360; Mills on Em. Dom. § 84; Ches. C. Co.* v. *Union Bank, 4 Cranch C. C. 75; Bonaparte Case, Baldw. C. C. 221; Jac. Law Dic., tit. Ad Quod Damnum; Petersdorf's Abr., tit. Ad Quod Damnum; Comeyn's Dig., tit. Ad Quod Damnum; Viner's Abr., tit. Ad Quod Damnum; F. N. B. 221–5; 2 Burn's Jus. Highw. 600; State* v. *Crane, 7 Vr. 394; Weir* v. *St. Paul R. R., 18 Minn. 155; Renns. & Sar. R. R.* v. *Davis, 4 Hand 145; Chatham Drainage Case, 6 Vr. 504; 1 Redf. Railw. 8.*

*Mr. Barker Gummere,* for respondents, cited—

*Fink* v. *Rundle, 10 Beav. 318; Rar. & Del. Bay R. R. Co.* v. *Del. & Rar. Can. Co., 3 C. E. Gr. 546; Penna. R. R. Co.* v. *Nat. R. R. Co., 7 C. E. Gr. 44, 8 C. E. Gr. 441; Osborne* v. *Williams, 18 Ves. 379; Battersby* v. *Smith, 3 Madd. 110;*

*Howard* v. *Earl of Shrewsbury*, L. R. (*2 Ch. App.*) *760; Story's Eq. Juris.* §§ *68, 71; Hill* v. *Beach, 1 Beas. 31; State* v. *D. L. & W. R. R., 1 Vr. 473; McGregor* v. *Erie R. R., 6 Vr. 115; Holbert* v. *St. Louis R. R., 45 Iowa 23; Att'y-Gen.* v. *D. & B. B. R. R., 12 C. E. Gr. 631, 644; M. & E. R. R.* v. *C. R. R., 2 Vr. 205, 210; North Mo. R. R.* v. *Lackland, 25 Mo. 515; North Mo. R. R.* v. *Gott, 25 Mo. 540; Iron R. R. Co.* v. *Ironton, 19 Ohio St. 299; Memphis Co.* v. *Memphis, 4 Coldw. 419; People* v. *Smith, 21 N. Y. 595; Matter of Albany St., 11 Wend. 152; Matter of Fowler, 53 N. Y. 60; Backus* v. *Lebanon, 11 N. H. 19; Hannibal* v. *R. R. Co., 49 Mo. 480; Bankhead* v. *Brown, 25 Iowa 540; C. R. & T. R. R.* v. *Lake, 71 Ill. 333; Scudder* v. *Trenton Falls Co., Sax. 694; Bellona Company's Case, 3 Bland 442; Brown* v. *Beatty, 34 Miss. 227; Buffalo R. R.* v. *Ferris, 26 Tex. 588; Bardstown R. R.* v. *Metcalfe, 4 Metc. 200; Giesy* v. *C. W. &c. R. R., 4 Ohio St. 308; Renn. & S. R. R.* v. *Davis, 43 N. Y. 137; Boston W. P Co.* v. *B. & W. R. R., 23 Pick. 360, 395; Ford* v. *Chicago R. R., 14 Wis. 617; Sedgwick on Const. Law 135, 442, 443; Cooley on Const. Lim. *116, *117, *410–413 notes, *538; Mills on Em. Dom. 11; Field on Corporations 440; 2 Dillon on Municipal Corporations 453; 1 Potter on Corporations 162; Tide Water Co.* v. *Coster, 3 C. E. Gr. 54, 63, 518; Weir* v. *St. Paul &c. R. R., 18 Minn. 155; Buffalo R. R.* v. *Brainard, 9 N. Y. 100; Drainage along Pequest, 12 Vr. 175; 6 Vr. 504; Paterson* v. *Society &c., 4 Zab. 385; D. & R. Canal* v. *R. & D. B. R. R., 1 C. E. Gr. 321; State* v. *Morris Pleas, 7 Vr. 72; Washington Ins. Co.* v. *Price, Hopk. Ch. 2; Taylor* v. *Commissioners, 105 Mass. 225; Dimes* v. *Grand J. Canal, 3 H. of L. Cas. 759, 793; Peck* v. *Freeholders, Spen. 457, 469, 4 Zab. 656, 657; Schroeder* v. *Ehlers, 2 Vr. 44, 49; State* v. *Crane, 7 Vr. 394, 397.*

The opinion of the court was delivered by

DIXON, J

The character of the bill filed in this cause, of the affidavits annexed thereto, and of those presented by the

defendants, is fully shown in the opinion of the chancellor
(*4 Stew. Eq. 475*), and need not be here restated.

The chancellor granted an injunction, in accordance with
the prayer of the bill, restraining the National Docks Rail-
way Company and its incorporators, and the other defend-
ants, from constructing the railroad described in the articles
of association of said company, across any of the lands or
tracks of the Central Railroad Company, and from taking
and condemning, or instituting any proceedings to take and
condemn, any of said lands or tracks, or to acquire the right
of crossing the same for the purpose of constructing said
railroad across the same, until they should fully answer the
bill; and the court should make other order to the contrary.
This injunction virtually stops the operation of the National
Docks Railway Company, and, if made perpetual, would
render the incorporation nugatory.

The grounds for the allowance of the writ are, that the
corporators are mere agents of the National Storage Com-
pany, and the moneys which they have paid in and expect
to pay in upon their stock subscriptions, are solely the
moneys of that company, and that the road is designed to
be only the means of providing the storage company with
transportation for its merchandise from the line of the New
Jersey Railroad, across the Central Railroad, to its depots,
and hence is for what is averred to be a private purpose.

These reasons, if they have any force, go directly to the
legality of the organization of the railway company. If
they should prevent the exercise by the company of the
powers which the general railroad law confers upon corpo-
rations created under it, it is because the company should
not have been created in the mode and for the purposes
in and for which it has been organized, and should be dis-
banded. It is not denied that every formal requirement of
that law has been complied with, and that, to all external
appearance, this company is a corporation by virtue of its
provisions, but it is claimed that, the motives and purposes
of its corporators being what they are, they have usurped a

corporate existence which the law did not authorize them to assume, and hence, while they may retain the form, they cannot exercise the functions of a corporation.  Not because this corporation threatens to assail any rights of the complainants, which, if lawfully organized, it would not be permitted to invade, but because it is a corporation *de facto* merely, and not *de jure*, does the chancellor prevent it from doing what only a legal corporation may do.

An inquiry and judgment of this nature are, we think, beyond the powers of the court of chancery, at least in a suit between private parties.

Whenever it is sought to impugn the legality of a corporation which exists under the forms of law, the remedy is by *quo warranto*, or information in the nature thereof, instituted by the attorney-general.   Said Ashhurst J., in *Rex* v. *Pasmore, 3 T. R. 199 (244)*: "A *quo warranto* is necessary where there is a body corporate *de facto*, who take upon themselves to act as a body corporate, but, from some defect in their constitution, they cannot legally exercise the powers they affect to use."   And, in *Rex* v. *Corporation of Carmarthen, 2 Burr. 869*, it was asserted by Lord Mansfield and Mr. Justice Denison, and conceded by all the counsel, "That there was no instance of any information in nature of a *quo warranto* being brought against any corporation, as a corporation, for an usurpation on the crown, but by and in the name of the attorney-general, on behalf of the crown."   These views are approved in *State* v. *Paterson & Hamburg Turnpike Co., 1 Zab. 9*, and are maintained and applied in numerous cases cited in the text-books on this subject.   We think they are accurate statements of the law applicable to the case in hand.

An apposite precedent may be found in *Attorney-General* v. *Stevens, Sax. 369*, where, be it noted, the state's officer was the informant.   There, a case closely resembling the present one was deemed not to be within the jurisdiction of the court of chancery.   The object of the information was to restrain the defendants, who professed to act under the authority of the C. and A. R. R. Company, and also said

National Docks R. R. Co. v. Central R. R. Co.

company, from erecting a bridge over South river, in Middlesex county. The first ground for relief was, that the company had no legal existence, inasmuch as the terms of its charter had not been complied with; and, consequently, the proceedings of the company were void. The allegation was, that the commissioners to receive subscriptions of stock had not fairly opened the books to the public, but had subscribed for all the stock themselves, in their own names and the names of a few of their friends. Chancellor Vroom said : " The object appears to be to bring before the the court the question, whether the commissioners acted in compliance with the law and in good faith. It is proper to inquire how far this court will undertake to look into these matters thus incidentally brought before it, and decide upon their illegality or irregularity. I am not satisfied, under existing circumstances, and with the facts before me disclosed by the information itself, that it is the province of this court to interfere in the manner desired. Here is a set of men claiming to be a legally incorporated company under the act of the legislature, exercising all the powers and functions of a corporation. They are a corporation *de facto*, if not *de jure*. Everything necessary to constitute them a corporation has been done, colorably at least, if not legally, and I do not feel at liberty, in this incidental way, to declare all their proceedings void, and treat them as a body having no rights or powers. It has been seen that the court will not do this where a corporation, properly organized, has forfeited its privileges, and there is but little difference, in principle, between the two cases. In both, the corporation is actually in existence, but whether legally and rightfully so, is the question. And it appears to me that if the court can take cognizance of the matter in this case, it must in all others where it can be brought up, not only directly, but incidentally. The corporation is now organized, and, if acting without authority, is liable to be brought, at any time, before a competent tribunal, in a mode the legality of which cannot, as I apprehend, be questioned."

This decision was rendered half a century ago, and its propriety has never hitherto been doubted. It correctly indicates a line beyond which the powers of the court of chancery do not extend, and which must be transgressed if the present injunction is to be sustained upon the reasons for which it was issued. We think, therefore, that that court cannot deny to the National Docks Railway Company the powers granted by the general railroad law, either because the money.to be used for carrying on its works has come, or is designed to come, from improper sources, or because the chief use to be made of its railroad will be the transportation of the merchandise of the storage company.

Unless, then, other reasons exist for this injunction, it cannot be maintained. And several others are pressed upon our attention.

The most important of these is, that the general railroad law is unconstitutional, so far as it undertakes to invest corporations created under it with the power of eminent domain. The argument presented upon this point, and elaborated by counsel with much acumen, was, that the legislature must determine upon the necessity of an enterprise, before private property can be condemned for its uses, and that the power of so determining cannot be delegated to any other body, *a fortiori*, to a body interested in the enterprise; that, by the general railroad law, the legislature has virtually attempted such delegation, by enacting that, whenever the requisite number of incorporators shall deem it for their interest to build a railroad under the act, then private property may be compulsorily taken therefor. When this proposition is narrowed, as counsel, in view of the uniform legislation of this state and all others, felt constrained to narrow it, by conceded limitations, it claims that, although the legislature may delegate to the interested corporation the power of defining the route of its road, and so, of determining whether the property of A. or of B. shall be condemned, yet the legislature must itself fix, at least in a general way, the termini of the line—must say, for example,

National Docks R. R. Co. v. Central R. R. Co.

that a company may " construct a canal from the waters of the Delaware river to the waters of the Raritan," before the right of eminent domain can be conferred upon it.  When thus reduced, it appears, I think, to be of not much import-ance to private interests whether the proposition be main-tained or overthrown.  If all the lands which can be traversed by a canal beginning in the Delaware river and ending in the Raritan river, may be submitted to the selection of an interested corporation to be organized and controlled by whosoever shall invest their means in the enterprise, the scope of legislative power is not materially widened by disregarding any such barriers as this rule aims to set up.  If the right to select within so large and unde-fined an area may be delegated, no principle can be formu-lated which will exclude any portion of the state.  The legislature cannot, with propriety, be said to have decided upon the necessity of a canal wherever, from the Delaware to the Raritan, the company may choose to construct it, in any other sense than it may to have decided upon the necessity of railroads, wherever, in the state, capital may be willing to build them.  The difference is only in degree, not in essence.

But, in truth, the whole proposition rests upon an unsound basis.  It is not indispensable that the legislature shall determine that any given enterprise is necessary or proper, before putting in operation the power of eminent domain.  This power is primarily an absolute one, and theoretically exists in this absolute form in the ultimate source of authority in every organized society.  In the con-stituted government of this state, the right of exercising it has been confided to the legislature, restricted by only two conditions: one, that compensation shall be made to the owner of the property taken; the other, that the use for which property may be taken shall be a public use.  In other respects it is without limit.  Whether the purpose to be subserved be necessary or wise, is for the legislature

alone. That body, also, must decide when or under what circumstances the occasion for its exercise arises; but whether the legislature will await the actual existence of the occasion, before determining to employ its prerogative, or will declare in advance what condition of things shall furnish the exigency for its agents to act, is a question purely for legislative discretion. To submit the control of these matters to others, is to restrict a power which, in these directions, is absolute. The courts may see that compensation is made, that the use is public, and that the case is one wherein the legislature has indicated its will that the power should be enforced, but beyond that the judiciary is without authority. If it be averred that the legislature has acted unreasonably or absurdly, the answer is, *stet voluntas pro ratione.*

These I understand to be the sentiments expressed by every writer on this topic, and by every judge in this state, whose opinion concerning the matter is recorded, so far as they have come to my notice; and I refer to the following authorities collated by counsel: *Smith's Com. p. 467* § *313; Sedgwick on Const. Law 442; Cooley's Const. Lim. *538; Mills Em. Dom.* § *11; Field on Corp.* § *440; 2 Dillon on Mun. Corp.* § *453; 1 Potter on Corp.* § *162; Tide Water Co.* v. *Coster, 3 C. E. Gr. 518.*

If the question were *res nova*, I can see ground, in pure reason, for contending that the sovereign cannot delegate any branch of this prerogative of eminent domain to nonpolitical agents, any more than it can so delegate its power of taxation; but that position being now plainly untenable, in view of the constant practice of legislatures and the uniform adjudications of courts, there remains no room, in my judgment, to doubt the constitutionality of such provisions as our general railroad law embodies on this subject. Their efficacy has been already twice assumed, if not adjudged, in this court. *State, M. & E. R. R. Co.* v. *Hudson Tunnel R. R. Co., 9 Vr. 548; Hudson Tunnel Co.* v. *Attorney-General, 12 C. E. Gr. 573.*

But it is next insisted, by the complainants, that the road which the National Docks Railway Company intends to construct will be a private and not a public one, and to establish this they adduce the purposes of the corporators. But I think these purposes are foreign to the inquiry. The character of the road, in this respect, is dependent, not on the designs of its projectors, but on the terms of the law which governs it. Said Judge Baldwin, in *Bonaparte* v. *C. & A. R. R. Co., Bald. C. C. 205:* "A road or canal constructed by the public or a corporation, is a public highway for the public benefit, if the public have a right of passage thereon by paying a reasonable, stipulated, uniform toll."

Tested by this criterion, and it is the true one, there can be no doubt that every railroad built by a corporation organized under our general law, becomes, *ipso facto,* a public road. The first section of the act designates such railroads as being " for public use in the conveyance of persons and property," and the twenty-sixth section enacts " that every such corporation shall start and run their cars, for the transportation of passengers and property, at regular times, to be fixed by public notice; and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting and the junction of other railroads, and at usual stopping-places established for receiving and *discharging* way passengers and freights for that train; and shall take, transport and discharge such passengers and property at, from and to such places, on the due payment of the freight or fare legally authorized therefor." The fifteenth section fixes the maximum rate for such charges. These provisions stamp every such railroad as one for public use, and legalize the condemnation of private property therefor. Whether the motive of the corporators is private convenience, and whether the actual use is likely to be general, are of no more importance than are the like considerations in the

laying out of what are called private roads. It is the *right* which characterizes the enterprise, and that is public.

Another objection raised is, that the general railroad law does not authorize the construction of a railroad which shall lie wholly within one city, as will the railway now enjoined. But upon this point we concur in the opposite views expressed by the learned vice-chancellor, in *Long Branch Com'rs* v. *West End R. R. Co.*, *2 Stew. Eq. 566*. If we remember that the evil which called forth this enactment was the incessant application to the legislature for special charters for all sorts of railroads, it will plainly appear to be our duty to construe it liberally with respect to the classes of railroads which may be built under it; and, as the vice-chancellor shows, only a constrained and partial interpretation could lead to the conclusion of the complainants. We find no reason in the law to believe that the legislature had it in mind to exclude this class of railways.

Upon all the other claims of the complainants we desire to add nothing to the adverse opinion of the court below, except that a point, now apparently first suggested, may be briefly noticed. It is said the injunction should be retained until the defendants, by their answer, conclusively show in what mode they intend to cross the complainants' tracks, to the end that the court may see that the crossing will work no inconvenience to the complainants which can be reasonably avoided; and we are referred to *Flower* v. *L. B. & S. C. Railway Co.*, *11 Jur.* (*N. S.*) *406*, in support of this position. But that case falls far short of this effect. There the company refused to disclose the purposes for which they were seeking to take the complainants' lands, saying, merely, "they are or will be required for the railway and works authorized by the act," and Vice-Chancellor Kindersley said that the court had a right to determine whether the land was *bona fide* required. But he admitted that the house of lords, in *Stockton and Darlington R. R. Co.* v. *Brown, 9 H. of L. Cas. 246*, had decided that when the purposes are pointed out and are *bona fide*, the purposes of the act or

the undertaking, then the particular land which shall be taken must be entirely in the discretion of the company. In the present case it is not doubted that the defendants' road must cross the complainants'; where that shall be done, the defendant corporation will determine by the location of its route. Any attempt to take the complainants' land not necessary for such crossing, or to cross in a manner not authorized by law, can be resisted before the judicial tribunal whose aid is requisite for the condemnation; and if, in the use of the crossing so made, conflict arises between the companies, then the interposition of equity may be invoked, according to the principles laid down in *D. L. & W. R. R. Co.* v. *Erie Railway Co.*, *6 C. E. Gr. 299.* But at present no ground for equitable interference is manifest.

We have thus dealt with the matters decided, because they are presented by the bill of complaint, and were discussed at the hearing; but if we had been inclined to a different opinion on many of the points involved, we still would not have been able to maintain the injunction, for most of these questions are questions of law, which certainly have not been heretofore settled in the complainants' favor; and no rule of equity is more firmly established than the doctrine that a complainant is not in a position to ask for a preliminary injunction, when the right on which he founds his claim is, as a matter of law, unsettled. *Citizens Coach Co.* v. *Camden H. R. R. Co.*, *2 Stew. Eq. 299.*

The injunction should be dissolved.

Injunction unanimously dissolved.