35 N.J. Super. 525 (1955)
114 A.2d 587
NEW JERSEY HIGHWAY AUTHORITY, PLAINTIFF-RESPONDENT,
v.
WILLIAM C. CURRIE, DEFENDANT-APPELLANT, AND CITY OF SOMERS POINT, TOWNSHIP OF SOMERS POINT, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1955.
Decided May 6, 1955.
*528 Before Judges GOLDMANN, FREUND and CONFORD.
*529 Mr. I.V. DiMartino argued the cause for the defendant-appellant (Mr. French B. Loveland, attorney).
Mr. Daniel G. Kasen argued the cause for the plaintiff-respondent (Mr. Morris M. Schnitzer, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
William C. Currie appeals from the entry of summary judgment and an order for possession in favor of the plaintiff. Under N.J.S.A. 27:12B-1 et seq., the plaintiff, New Jersey Highway Authority, is charged with the responsibility of building the Garden State Parkway, N.J.S.A. 27:12B-20. By appropriate resolution, it determined that it was necessary to take the property of the defendant, comprising approximately 34.67 acres of meadow-land and islands in Great Egg Harbor Bay, New Jersey, and pursuant to R.S. 20:1-1 et seq., sought the appointment of commissioners for condemnation of the property.
The plaintiff moved for summary judgment supported by the affidavit of Oliver S. Deakin, Parkway Design and Construction Engineer on the staff of the Chief Engineer of the New Jersey Highway Authority, stating that on his recommendation the Chief Engineer had approved the taking of the entire fee of the property of the defendant rather than a lesser estate. His reason was that all the land in question would be utilized for parkway purposes, including protection of the causeway which is part of the parkway, probable use of the land for recreational areas with parking, fishing, swimming and boating facilities, and its use for maintenance purposes, including storage areas. Additionally, the taking of the entire fee would ensure that there would be no unsightly structures upon the land.
The defendant opposed only the taking of any part of his land not necessary for the actual highway right-of-way. His affidavit states that he was informed that the purpose of taking the entire fee was for the construction contractor's use of the land as a "spoil area" in connection with dredging necessary in the construction of the causeway.
*530 On the motion for summary judgment, the trial court determined that palpably there was no genuine issue as to any material fact, and ordered judgment for the plaintiff, directing that the condemnation proceed in accordance with law. The plaintiff having petitioned for immediate possession, the court also entered judgment for possession.
At the outset it is necessary to determine whether the pleadings and affidavits raise a genuine issue as to any material fact, R.R. 4:58-1 et seq. The defendant argues that by entering summary judgment for the plaintiff the trial court deprived him of the right to show that all of his land was not needed for parkway purposes and that the plaintiff abused its discretion in preempting the entire fee of the defendant. In Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67 (1954), it is stated that summary judgment:
"* * * is designed to provide a prompt, businesslike and inexpensive method of disposing of any cause which a discriminating search of the merits in the pleadings, depositions and admissions on file, together with the affidavits submitted on the motion clearly shows not to present any genuine issue of material fact requiring disposition at a trial. * * *"
The defendant does not take issue with the plaintiff's assertion that the land will be used for parkway purposes, including protection of the causeway, maintenance, storage and recreational facilities, and insurance against unsightly structures, but he resists its acquisition for use as a "spoil area." Therefore, the only issue to be determined is whether the taking of this land for such purposes is a palpable abuse of statutory discretion  a proper issue for disposition by summary judgment. City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377 (1951); Judson v. Peoples Bank & Trust Co. of Westfield, supra.
The area encompassed by the appeal before us concerns the taking of private property by the sovereign under its power of eminent domain. The right of eminent domain is an inseparable attribute of sovereignty, an inherent power founded on the primary duty of a government to serve the *531 common need and to advance the general welfare. National Docks R.R. Co. v. Central R.R. Co., 32 N.J. Eq. 755 (E. & A. 1880); Ryan v. Housing Authority of City of Newark, 125 N.J.L. 336 (Sup. Ct. 1940); Bergen County Sewer Authority v. Borough of Little Ferry, 5 N.J. 548 (1950); Abbott v. Beth Israel Cemetery Ass'n. of Wood-bridge, 13 N.J. 528 (1953); Valentine v. Lamont, 25 N.J. Super. 342 (App. Div. 1953), affirmed 13 N.J. 569 (1954), certiorari denied 347 U.S. 966, 74 S.Ct. 776, 98 L.Ed. 1108 (1954); Texas Pipe Line Co. v. Snelbaker, 30 N.J. Super. 171 (Law Div. 1954), affirmed 33 N.J. Super. 11 (App. Div. 1954); 1 Nichols on Eminent Domain (3d ed. 1950), § 1.14 et seq.
The New Jersey Highway Authority by the enactment of N.J.S.A. 27:12B-1 et seq. is authorized to "* * * acquire, construct, maintain, repair and operate highway projects * * *." Under N.J.S.A. 27:12B-3(d), the Authority is given the power in its discretion to acquire such property for "highway projects" as it deems necessary for the construction and operation of its projects. N.J.S.A. 27:12B-3(d) reads in part as follows:
"(d) `Project' or `highway project' means any express highway, superhighway or motorway * * * acquired or to be acquired * * * together with such adjoining park or recreational areas and facilities as the Authority, with the concurrence of the Department of Conservation and Economic Development, shall find to be necessary and desirable to promote the public health and welfare and feasible for development pursuant to this act, and shall include but not be limited to all bridges, * * * service areas, service stations, service facilities, communications facilities, and administration, storage and other buildings which the Authority may deem necessary for the operation of such project, together with all property, rights, easements and interests which may be acquired by the Authority for the construction or the operation of such project."
In those cases where the Authority is unable to acquire the necessary land by agreement with the owner, the provisions of R.S. 20:1-1 et seq. are followed. Condemnation of either the fee, or a lesser interest, is limited to lands reasonably necessary for the achievement of the statutory purpose. *532 New Jersey Turnpike Authority v. Washington Tp., 16 N.J. 38 (1954).
The defendant argues that here the uses to which the land will be put are unreasonable. In our opinion the Authority, in failing to indicate except generally in the resolution or petition for possession the purpose to which the land would be put, did not follow what we believe to be the better practice. This court can look only to the plaintiff's pleadings and affidavit to find the specific uses for which the Authority seeks to condemn the disputed land. Better practice would have been to include in the Authority's resolution and in the declaration of taking the intended specific uses of the land.
In City of Newark v. New Jersey Turnpike Authority, supra, it was held that:
"So long as such a corporation (Turnpike or Highway Authority) operates within the orbit of its statutory authority, it is well established that the courts will not interfere with the manner in which it exercises its power in the absence of bad faith, fraud, corruption, manifest oppression or palpable abuse of discretion. * * * The City clearly failed to raise any real question as to whether the Authority's plans were so far from right as to be a manifest abuse of discretion and under Rule 3:56-3 it was therefore entirely proper for the court below to have granted the defendant's motion for summary judgment."
"The exercise of such discretion will not be upset by the courts in the absence of an affirmative showing of fraud, bad faith or manifest abuse." City of Trenton v. Lenzner, 16 N.J. 465 (1954), certiorari denied 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. ___ (1955); Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237. Here, there is not only no affirmative showing of fraud or bad faith; neither is even charged. In the absence of any evidence to the contrary, the good faith of public officials is to be presumed; their determinations are not to be approached with a general feeling of suspicion. Ward v. Scott, 16 N.J. 16, 23 (1954).
Nor do we find any manifest abuse of discretion in selecting the defendant's land for use in connection with *533 the construction of the Garden State Parkway. In the absence of a manifest abuse of discretion, binding effect must be accorded the action of the Legislature in authorizing the Authority, for an object which it deems in the interest of the public health and welfare, to acquire land for "highway projects," including specifically recreational facilities, maintenance and storage areas. Clearly, the acquisition of land for purposes authorized by the statute cannot be held to be a palpable abuse of discretion. If the land is to be devoted to a legitimate public use, any difference of opinion between the owner and the public body as to the necessity of its acquisition or any question of alternative route is not a proper subject for judicial determination. Ryan v. Housing Authority of City of Newark, supra; Burnett v. Abbott, 14 N.J. 291 (1954); City of Trenton v. Lenzner, supra.
There remains the question whether the use of the land as a "spoil area" is a palpable abuse of discretion. It must be conceded that the causeway being part of the parkway project, a "spoil area" is necessary in the dredging of the causeway. Clearly it becomes a parkway purpose and is therefore authorized by the statute, N.J.S.A. 27:12B-2, 27:12B-3(d).
The defendant argues that the taking of his land for a "spoil area," both as to quantity and quality, constitutes an abuse of discretion and that the taking of the right, title and interest should not be greater than necessary to effectuate the public use which called the power of eminent domain into play. On oral argument, the Authority conceded that if the land was to be taken solely for use as a "spoil area," an easement would be sufficient, and hence the defendant's argument would have some merit. However, the taking by the Authority of the entire fee is not alone for a "spoil area," but for many other purposes  protection of the causeway, maintenance, storage and parking areas, recreational facilities, such as fishing, swimming and boating, in addition to the actual parkway, and "spoil area" purposes. Thus, we must determine whether the taking of the entire fee for all the enumerated purposes was a manifest abuse of discretion. We *534 think not. The Authority in the exercise of its discretion has sought the entire tract for the various purposes indicated, and it is not for us to say that the quantity of land being taken is excessive. To do so would be to substitute our judgment for the judgment of the Authority, which is the duly constituted legislative agent. Mayor, etc., of City of Elizabeth v. New Jersey Turnpike Authority, 7 N.J. Super. 540 (Ch. Div. 1950). As the Supreme Court held in Burnett v. Abbott, supra:
"The cases and authorities are in agreement that in condemnation proceedings the quantity of land to be taken, its location and the time of taking are within the discretion of the body endowed by the Legislature with the right of eminent domain. * * * The amount and extent of the taking is left to the discretion of the legislative agent and it will not be interfered with by the courts when it is exercised in good faith. The court only interferes where there is a plain case of abuse of discretion in the exercise of the power of eminent domain in excess of the public use upon which it is bottomed in a particular instance. * * *"
See also Valentine v. Lamont, supra.
Further, the defendant argues that the Authority failed to comply with N.J.S.A. 27:12B-3(d) and 27:12B-5 in that it did not obtain the concurrence of the Department of Conservation and Economic Development. However, that department has no concern with the acquisition of property for use as a "spoil area" or for protection of the causeway, or for insurance against unsightly structures, or for future use for maintenance purposes or storage facilities. Its interest is solely in use of the land for "recreational facilities." Possibly, at some future time, the Authority may plan to use the land for such purposes. Until then, the State Department of Conservation and Economic Development is not concerned, and its consent and cooperation need not be obtained. Assumptively, the Authority will, should it ultimately determine to use the land for recreational purposes, obtain the Department's concurrence.
Accordingly, the order for summary judgment entered by the trial court is affirmed.
*535 CONFORD, J.A.D. (dissenting).
I would reverse the summary judgment granted plaintiff in this case. It is my view that a genuine issue involving material facts was presented in the pleadings and papers submitted on the motion and that it was consequently error to determine the questions of fact on the motion rather than after plenary trial. Devlin v. Surgent, 18 N.J. 148.
The New Jersey Highway Authority instituted proceedings in September, 1954, under the Eminent Domain Act, R.S. 20:1-1 et seq., to condemn real property owned by defendant in the Township of Somers Point, Atlantic County, in connection with the construction of The Garden State Parkway. In its complaint it described the property to be taken as a "fee simple absolute unless a lesser interest is shown" in and to certain premises of the defendant therein described. The property sought to be taken consists of a part of four islands situated in Great Egg Harbor Bay. The roadway proper of the parkway traverses part of the easterly portion of what is known as Island No. 2. Included in the proposed taking, however, were other of the said islands to the east of Island No. 2, aggregating 40 acres, and separated from the mainland and from Island No. 2 by channels. It is only the taking of this latter tract to which the defendant property owner here objects.
The complaint recites that:
"Plaintiff has duly determined that it is reasonably necessary to acquire the lands, premises, property, rights and easements hereinafter described for said project."
Defendant filed an answer and an amended answer to the complaint denying that plaintiff requires the fee to the property and stating "that an easement is all that plaintiff requires," and also, by way of a first separate defense, that plaintiff's complaint sets forth "an unreasonable exercise of a delegated authority."
Under the amendment of the Eminent Domain Act, L. 1953, c. 20, the proceeding is an action in the Superior Court, subject to the procedural provisions of the rules of court, *536 Morris May Realty Corp. v. Board of Chosen Freeholders, etc., 18 N.J. 269.
In due course plaintiff gave notice of motion for summary judgment, relying upon an affidavit by Oliver A. Deakin, a parkway design and construction engineer on the staff of the chief engineer of the New Jersey Highway Authority since its organization in 1952. Paragraph 3 of the affidavit reads:
"3. On my recommendation the Chief Engineer of the New Jersey Highway Authority approved the taking of the entire fee simple estate of the property described in the complaint. The reason for the taking of the entire fee rather than a lesser estate, is that after the construction of the Parkway in that area, all of the land in question will be utilized for Parkway purposes. Those Parkway purposes would include the control of the land for the protection of the causeway which is part of the Parkway. In addition, the land will probably be utilized for recreational facilities such as a parking area, fishing, swimming and boating. Again, it may be used for maintenance purposes which would include storage areas. Another purpose in acquiring the fee is to make certain that no unsightly structures would appear on the land in question and thus, adversely affect the Parkway project."
Paragraph 4 of the affidavit recites that the plaintiff adopted a resolution on the recommendation of its chief engineer "that it was reasonably necessary to acquire the fee in the lands involved in this action."
Defendant filed an answering affidavit reciting that on August 17, 1954 Mr. Andrew Henry, negotiator for the New Jersey Highway Authority, called at his home and advised him that the Authority would need to acquire not only that portion of his land upon which the roadway and a bridge over the islands would be constructed, but in addition, all of his lands on the east side of the roadway right-of-way "to be used by the construction contractors as a `spoil area' in connection with the dredging operation." He also states that on August 20, 1954 he called at the office of the engineering firm which is consulting engineer for the Authority and was advised by it that the lands to the east of the right-of-way were to be used by the construction contractors as a "spoil area." It is to be noted that the complaint herein was filed *537 September 1, 1954. At the oral argument of this appeal it was agreed that the premises referred to were indeed used as a "spoil area" in connection with dredging for construction of the bridge across the islands, the term having reference to the dumping of silt and other substances dredged from the channel. Moreover, the brief filed on behalf of the plaintiff concedes that some of the land taken was intended to be used for that purpose, though it was not mentioned in its affidavit on the motion.
Plaintiff is a public agency of the State of New Jersey created under L. 1952, c. 16, primarily for the purpose of building and operating the Garden State Parkway. (N.J.S.A. 27:12B-1 et seq.). It is given power (section 5, as amended by L. 1953, c. 164):
"To acquire in the name of the Authority by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of eminent domain, any land and other property, including land under water and riparian rights, within or without the State of New Jersey, which it may determine is reasonably necessary for any project * * * and all rights, title and interest in such land and other property, * * * and any fee simple absolute or any lesser interest in private property, * * *."
The Authority is also given power:
"To acquire in co-operation with the Department of Conservation and Economic Development limited roadside areas adjoining said projects and transfer any or all of such areas to the Department of Conservation and Economic Development so that said department may maintain such areas as roadside parks; * * *."
In connection with the latter provision, it is to be noted that the act defines the "projects" or "parkway projects" authorized to be undertaken as including (section 3):
"* * * such adjoining park or recreational areas and facilities as the Authority, with the concurrence of the Department of Conservation and Economic Development, shall find to be necessary and desirable to promote the public health and welfare and feasible for development pursuant to this act, * * *."
*538 It is settled that the exercise of discretion by a public agency in determining how much land to take for a public purpose within its statutory purview will not be disturbed by a court "in the absence of an affirmative showing of fraud, bad faith or manifest abuse," City of Trenton v. Lenzner, 16 N.J. 465, 473 (1954); Burnett v. Abbott, 14 N.J. 291, 295 (1954), or, interchangeably stated, where discretion is exercised "arbitrarily or unreasonably," City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377, 382 (1951). It follows, of course, that where there is such a showing the exercise of power may be restrained as illegal. In determining whether these disabling circumstances are here present we must consider that "the taking of the right, title, and interest of the owner should not be greater than necessary to effectuate the public use which called the power of eminent domain into play." Valentine v. Lamont, 13 N.J. 569, 576 (1953), affirming the decision in 25 N.J. Super. 342 (App. Div. 1953), where the court adverts to "the general rule that in condemnation proceedings an estate of such quality may be taken as is reasonably necessary for the accomplishment of the purpose in aid of which the proceedings are brought." (25 N.J. Super., at page 352). This rule is to be distinguished from the principle that when the Legislature itself determines that a particular public purpose requires the taking of a fee simple rather than a lesser estate the courts will not review the legislative finding. United States Pipe Line Co. v. Delaware, L. & W.R.R. Co., 62 N.J.L. 254, 266 (E. & A. 1898).
Having these principles in mind, the only question presented upon this appeal is whether it was "palpably" shown that there was no genuine dispute as to material facts presented on the motion for summary judgment in the Law Division and that upon the undisputed facts plaintiff was entitled to judgment as a matter of law. R.R. 4:58-3. Consequently, if there was no such showing as to both of the elements stated the court erred. In Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73 (1954), speaking of summary judgment proceedings, the Supreme Court said *539 that "the role of the judge in that procedure is to determine whether there is a genuine issue as to a material fact, but not to decide the issue if he finds it to exist." Devlin v. Surgent, supra.
In my judgment there clearly existed material issues of fact bearing upon plaintiff's good faith and the reasonableness of its action, both in taking all of the 40 acres of additional land involved and with respect to the quantum of the estate taken, which should not have been resolved on the motion. First, there plainly was an issue, on the affidavits, as to whether the property or a portion thereof was not required merely as a "spoil area," the purpose of which would be exhausted by completion of the dredging and construction operations. An inference thereof may be drawn from defendant's affidavit. Plaintiff's affidavit is silent on the point. But it is stated in plaintiff's brief:
"* * * It is evident, however, that dredging operations for causeways and bridges, necessitate a place for deposit of the material brought up by the underwater excavation. Neither the courts nor the legislature have ever denied to a public body the right to provide such facilities and to acquire property for such purposes, * * *."
It may readily be conceded that the Authority had the right to provide its contractors with facilities for such a purpose, but it by no means follows therefrom that it would not be an abuse of the power of eminent domain to take a fee simple absolute estate for a purpose fully served at the end of the dredging and construction operations.
The objective stated in the plaintiff's affidavit of controlling the land "for the protection of the causeway" seems to require further explanation since it would hardly appear necessary to take 40 acres of land east of the roadway to build a fence or other protective device for the causeway.
The affidavit in support of the motion says the property "may be used" for maintenance purposes which would include storage areas, and also "to make certain that no unsightly structures would appear on the land." A bona fide taking of the land for purposes of this character would be unexceptionable, but, again, a question of fact as to good faith arises. *540 First, the language of the affidavit as to the need is equivocal. And the large area in question would seem of questionable utility in those respects since it consists of islands separated from the mainland and from the land on which the roadway proper is laid by water channels. Moreover, the indication from the proofs and from plaintiff's present concession that the entry into possession of the property in the first instance was for dumping in connection with the dredging raises more than a captious doubt as to whether the appropriation of the entire 40 acres was actually for the objects of storage and maintenance or preventing "unsightly structures."
The position of the plaintiff is most vulnerable in its submission of the purported use of the property for "recreational facilities, such as a parking area, fishing, swimming and boating." As appears from the statutory provisions above quoted, the Authority has no right to take for such purposes without the prerequisite concurrence of the Department of Conservation and Economic Development. The statute clearly makes that a condition precedent to any finding by the Authority that it is necessary and desirable to acquire and develop such adjoining "park or recreational facilities." The power of condemnation being in derogation of private property rights, it is required to be strictly construed and all statutory prerequisites must be established to sustain its exercise. Manda v. City of Orange, 75 N.J.L. 251, 255, 256 (Sup. Ct. 1907); Board of Education of Borough of Ringwood v. North Jersey District Water Supply Commission, 4 N.J. Misc. 113 (Sup. Ct. 1926). It seems indisputable that prospective recreational and park purposes were not a valid basis for the taking of the property prior to fulfillment of the statutory requirement of consent by the Department of Conservation and Economic Development, a condition not here met. It is, of course, obvious that the failure to take the property for such purposes at the present time would not prejudice the Authority in doing so later upon fulfillment of the statutory condition.
It is not meant to be suggested that a public authority may not appropriately entertain several purposes to be served *541 by land proposed to be taken by condemnation; nor that a taking cannot be legally sustained unless it is affirmatively established by the agency that the property will necessarily subserve all of the purposes motivating the taking, where the property is in good faith needed, in entirety, for one or more of such purposes. But here it appears that, of the several purposes and uses now advanced by plaintiff, one ("spoil area") apparently required no more than an easement terminable upon the conclusion of the construction of the causeway and was not even mentioned in plaintiff's affidavit on the motion; another was not legally entertainable without prior statutory conditions not here met, and that the others were of dubious relationship to a taking of the amount of land here sought to be acquired, so far as can fairly be judged from the affidavits submitted on the motion. The entire factual picture presented consequently raises a substantial question in my mind as to whether the Authority in good faith required the entire 40 acres of property in fee simple for Parkway purposes. That factual question hardly lent itself to resolution on the scanty data submitted below, even were it proper, which it was not, to determine it on motion. It is an issue peculiarly requiring trial for fair and considered resolution. Cf. City of Newark v. New Jersey Turnpike Authority, supra (7 N.J., at page 383).
Although the entire atmosphere of this matter is redolent of a post facto rationalization by the Authority of a taking intended originally only for the dredging, it is entirely possible that upon a trial of the issues the court might determine that the taking was of an estate and an area lawfully and reasonably within the bona fide needs of the Authority. Yet, on the other hand, after such plenary processes, including personal testimony, cross-examination and rebuttal, the court might find to the contrary. While every reasonable latitude of judgment and discretion in fulfillment of its important statutory functions is properly plaintiff's, it does not as a state agency occupy the position of a favored suitor where there is raised, as is the right of every person adversely affected by its activities, a question as to excess *542 in its assumption of power. It is always the duty of the courts to be on the alert to the "grave substantive danger of conceding to the State a preferred position in the courts as a plaintiff," State v. Otis Elevator Co., 12 N.J. 1, 13 (1953); Wilentz v. Crown Laundry Service Inc., 116 N.J. Eq. 40, 41 (Ch. 1934).
In the present situation the rules of court accorded defendant a right to a trial. I believe he should have it. He should not be concluded by plaintiff's mere ipse dixit in an affidavit on a motion.