Condemnation of 1.6 Acres of Land Situate in Derry Township, Dauphin County, Pennsylvania, by the Lower Dauphin School District. William G. Albright, Simon Rhoads, Isaac W. Albright and Claude M. Basler, Appellants.

Argued June 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

420

*Herbert A. Schaffner*, with him *Reynolds, Bihl & Schaffner*, for appellants.

*Thomas D. Caldwell, Jr.*, with him *Caldwell, Clouser & Kearns*, for appellee.

OPINION BY JUDGE ROGERS, July 24, 1975:

William G. Albright, Simon Rhoads, Issac W. Albright and Claude M. Basler have appealed from an order of the Court of Common Pleas of Dauphin County dismissing their preliminary objections attacking the lawfulness of the taking by the Lower Dauphin School District of land containing one and six tenths of an acre in Derry Township for school purposes.

The preliminary objections raised a number of questions, the disposition of which by the court below are not contested by the appellants here. Those still advanced are: (1) whether the appellee School District sought approval of the Department of Education before condemning the tract in question, (2) whether the appellants have standing to object to the taking on the asserted ground that the School District did not comply with regulations of the Department of Education, and (3) whether the failure of the School District to obtain prior approval by the Department of Education of the condemnation was a violation of departmental regulations rendering the District powerless to condemn.

Since the lower court found, as the appellants contended, that the District in fact did not seek prior departmental approval we need not discuss the first question.[1] As for the second question concerning standing, we merely observe that, as the quoted portion of the lower court's opinion hereinafter reproduced demonstrates, the order below was not based on a determination that the appellants lacked standing. It was grounded rather on the Court's negative answer to the third question here posed—whether under the law the School District's power to condemn was vitiated by its failure to obtain the prior approval of the Department. Judge DOWLING correctly disposed of this question and we adopt the following portions of his opinion as an extremely able and very thorough consideration of the subject:

"We must now consider what effect the failure to seek approval has on the school district's right to condemn the tract; it already having been decided that such condemnation was for lawful school purposes. The condemnor argues that such regulations which condemnees claim were not complied with deal solely with approval required for school site acquisition and construction if a school district desires monetary reimbursement for such site acquisition. When the school district sought approval in August, 1969, Regulation 3-450[6] was in effect. This

---

1. The School District, of course, does not agree that this finding is supported by the record.

"6. 3.450 Approval of Sites.

"1. The current and projected requirements of property acquisition to provide sites for new schools and related facilities shall be established as part of the Long Range Developmental Plan.

"2. It is the obligation of the board of school directors, as soon as the Long Range Developmental Plan has been approved by the Superintendent of Public Instruction, to acquire within a reasonable period of time all land required for school sites.

"3. The board of school directors, in consultation with an architect, site planner and other professional advisors relative to

was supplemented by regulations issued September 11, 1970[7].

"Both place responsibility for acquiring the land on the Board of School Directors and while they speak of acquisition approval, the penalty for failing to secure it is specifically spelled out in the 1970 regulation 'approval of the Department of Education prior to purchase is prerequisite to qualifying for reimbursement.'

"There is a scarcity of legal authority or interpretation of such [administrative] regulations; however, a review of the statutory provisions regarding site acquisition aids substantially in interpreting the regulations of the Department of Public Instruction. Sections 7-701 and 7-702 of the Public School Code of 1949, as amended in 1970, state:

---

real estate, sub-surface investigation, water supply and sewage disposal, shall prepare a School Site Analysis Report on the form provided by the Department of Public Instruction for each property under consideration as a potential site for a school.

"4. The board of school directors, on the basis of an impartial and unprejudiced evaluation of each potential site by using School Site Analysis Reports, shall select the most desirable site and submit to the Superintendent of Public Instruction a Petition for the Approval of a School Site, accompanied by the School Site Analysis Report for the proposed site."

"7. 3.200 School Building Sites.

3-210 Regulations for Approval of School Sites.

"1. The current and projected requirements of property acquisition to provide sites for new schools and related facilities shall be established as part of the long range developmental program.

"2. It is the obligation of the Board of School Directors, as soon as the long range developmental program has been accepted by the State Board of Education, to acquire within a reasonable period of time land required for all school sites.

"Approval of the Department of Education prior to purchase is prerequisite to qualifying for reimbursement. When acquisition is five or more years in advance of need for the building as shown in the long range plan, it is considered to be purchased "in advance of need" and reimbursement will be paid in the year of acquisition. Such reimbursement will be calculated according to the provisions of law in force at the time of purchase.

'The board of school directors of each district shall provide the necessary grounds and suitable school building to accommodate all the children between ages of 6 and 21 years, in said district, who attend the school. Such building shall be constructed, furnished and equipped and maintained in a proper manner as herein provided. . . .

'The location and amount of any real estate required by any school district for school purposes shall be determined by the board of school directors of such district, by a vote of the majority of all the members of such board. No school building shall be erected without a proper playground being provided therefor.'

"With regard to condemnation, Section 7-721 reads as follows:

'Whenever the Board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that the board has selected for school purposes, such board of school directors, after having decided upon the amount and location thereof, may enter upon, take

---

"3. The Board of School Directors, in consultation with an architect, landscape architect, engineer, the school district solicitor, and other professional consultants relative to real estate, sub-surface investigation, water supply and sewage disposal, shall prepare a *School Site Analysis Report*, as provided by the Department of Education, and a *School Site Analysis Plan* for each property under serious consideration as a potential site for a school.

"4. The Board of School Directors, on the basis of an impartial and unprejudiced evaluation of each potential site by using School Site Analysis Reports and Plans, shall select the most desirable site and submit to the Department of Education a *Petition for Approval of School Site* accompanied by the School Site Analysis Report and *School Site Analysis Plan* for the Proposed site.

"If the site fails to meet the standards established herein or in the guidelines of the Secretary of Education, the Department of Education may require submission of like data on alternate sites as a basis for judgment."

possession of, and occupy such land as it may have selected for school purposes, whether vacant or occupied, and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this act. . . .'

"Thus, neither do these aforequoted sections of the Public School Code, nor do any other sections of the Public School Code in existence in 1969 and 1970, place any affirmative statutory duty upon the board of school directors to obtain approval of the Commonwealth or the Department of Public Instruction prior to such obtainment of real estate. The judgment, discretion and choice for the acquisition of real estate is placed solely upon the board of school directors. The legislature amended June 1, 1972, Section 7-703 of the Public School Code to include the underlined following language:

'In order to comply with the provisions of this act, and subject to the conditions thereof, the board of school directors of each district is hereby vested with the necessary power and authority to acquire, in the name of the district, by purchase, lease, gift, devise, agreement condemnation, or otherwise any and all schools and real estate, either vacant or occupied, including lands theretofore occupied by streets and alleys which have been vacated by municipal authorities, and to acquire by purchase, lease, gift or devise, other buildings *approved for school use by the Department of Education* as the board of school directors may deem necessary to furnish school buildings or other suitable sites for proper school purposes for said district or to enlarge the grounds of any school property held by such district, and to sell, convey, transfer, dispose of, or abandon the same, or any part hereof, as the board of school directors may determine. As amended 1972, June 1, P.L. .., No. 89, §2, imd. effective.'

"Thus, not until 1972 did the legislature, in fact, make any prior Department of Education approval in the

Public School Code regarding a site acquisition, and this approval related not to unimproved sites but specifically the purchase by a district of 'other buildings for school use.'

"It therefore appears that the school district's failure to obtain approval of the site in question goes to its right to obtain state financial reimbursement and not to the legal effect of its power to condemn.

"Finally, we seriously question the condemnees standing to contest that the Lower Dauphin School District did not comply with the rules and regulations of the Department of Public Instruction, now the Department of Education. Although a condemnee always has an interest in seeing that all the proper legal procedures are followed if he is to lose valuable property interest, the condemnees have presented no claims nor allegations that the Board of School Directors of the Lower Dauphin School District have not fully complied with the relevant sections of the Public School Code of 1949 relating to acquisition and condemnation of land. In point of fact, condemnees claim only that condemnor did not fully comply with certain non-statutory regulations. It would seem that the Department of Education is the only party to complain or possibly be adversely affected if its regulations are not fully complied with. The purpose of the regulations is not to protect the interest of potential condemnees but to promote the interest of the efficient and adequate development of the public school system. It should further be noted that condemnees admit that they made no investigation with the Department as to the school district's interest in the tract when they purchased it in April of 1973. This is not a situation where a condemnee made an investigation and relied upon the school district's failure to comply with certain regulations before purchasing the property."

Order affirmed.