STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-
PORTATION, PLAINTIFF, v. MALIBU BEACH, INC., A CORPO-
RATION OF NEW JERSEY; SEAVIEW MARINA ASSOCIATES,
A PARTNERSHIP OF PENNSYLVANIA; CONTINENTAL
BANK, A CORPORATION OF PENNSYLVANIA; STATE OF
NEW JERSEY; THE R.C. MAXWELL COMPANY, A CORPORA-
TION OF NEW JERSEY; TOWNSHIP OF EGG HARBOR, IN
THE COUNTY OF ATLANTIC, A MUNICIPAL CORPORATION
OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division Atlantic County

Decided February 21, 1986.

292

*Peter A. Valenti* for plaintiff (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*John J. Markwardt* for defendants Malibu Beach, Inc. and Seaview Marina Associates (*Horn, Kaplan, Goldberg, Gorny & Daniels,* attorneys).

WILLIAMS, A.J.S.C.

This condemnation action comes before the court on an order to show cause wherein plaintiff seeks a judgment appointing commissioners and determining that it has duly exercised its power of eminent domain with respect to certain property of defendant abutting State Highway No. 152 in Egg Harbor Township. Defendants Malibu and Seaview oppose the application. No other defendant appeared in opposition thereto.

With respect to condemnation actions *N.J.S.A.* 20:3–8 provides:

> The action shall be instituted by filing of a verified complaint in form and content specified by the rules and shall demand judgment that a condemnor is duly vested with and has duly exercised its authority to acquire the property being condemned, and for an order appointing commissioners to fix the compensation required to be paid.

Complementing the statute, our rules provide for summary proceedings. Rule 4:73–1, dealing with condemnation actions, refers to *R.*4:67, which sets forth the procedures for summary actions. Rule 4:67–4(a) requires, before the return day, that defendant file either an answer, an answering affidavit or a motion returnable on the return day.

Prior to the return day of the order to show cause defendants Malibu and Seaview filed a certification of Albert A. Ciardi, Jr., a principal of both corporations, asserting:

> It is my belief that the property in question is governed by the Coastal Area Facility Review Act and the Wetlands Act of 1970. Therefore, I have not been advised by the State that it has complied with the requirements of these acts.

Defendants asserted that plaintiff had no authority to condemn the property in question because of noncompliance with the Coastal Area Facility Review Act, *N.J.S.A.* 13:19–1 *et seq.*, and the Wetlands Act of 1970, *N.J.S.A.* 13:9A–1 *et seq.*, through its failure to obtain requisite approvals.

The State thereafter, prior to the return day, submitted a copy of a letter of July 18, 1983 from the Department of Environmental Protection (DEP), Division of Coastal Resources, indicating that a CAFRA permit was not required. It also submitted a copy of a DEP permit of August 22, 1985. The permit was issued subject to the following conditions:

> 1. Prior to site preparation receive an approved U.S. Army Corps of Engineers permit and submit a copy to this Division's BCE & BP & PR.
>
> 2. Prior to site preparation receive an approved U.S. Coast Guard permit(s) for all navigable waterway crossings and submit a copy to this Division's BP & PR.
>
> 3. Prior to site preparation stake for approval by this Division's Bureau of Coastal Enforcement and Field Services (BCE & FS) Pomona Office (609-652-0004) the extent of the roadway's encroachment on the wetlands.

4. Prior to site preparation submit to the Division's BCE & FS Pomona Office the proposed location of any proposed dewatering site, dewatering plans, method of spoil transportation, and the upland spoil disposal site for their review and written approval.

5. By April 1, 1986 submit two copies to the Division's BCE & FS Pomona Office and two copies to the BP & PR of a schedule for and engineering plans of the 24.12 acre Drag Island Wetlands Mitigation Program for the review and approval of this Division.

6. By April 1, 1986 submit two copies to the Division's BCE & FS Pomona Office and two copies to the BP & PR of a schedule for and engineering plans of the 1.32 acre on-site wetland restoration of the existing embankment east of Broad Thorofare for the review and approval of this Division.

7. By June 1, 1987 provide evidence to the BP & PR that NJDOT has acquired title to the Drag Island Mitigation site including any Riparian Instruments of Occupancy that may be required under the State's Riparian Statutes.

8. By June 1, 1987 provide evidence that the NJDOT has advertised and awarded a wetlands mitigation construction contract for both Drag Island and the 1.32 acre on-site wetlands mitigation parcel.

9. The NJDOT and/or its contractors must commence work on the Wetland Mitigation Program by excavating the Drag Island site by the Fall/Winter of 1987–88 at *both* mitigation sites and must plant new wetlands in the Spring of 1988 with completion of planting by June 1, 1988.

10. The Division's BCE & FS will inspect at times they deem acceptable, the Drag Island Mitigation Site and the on-site wetland restoration site to insure that the permittee's programs have achieved an 85% success rate. Should the permittee's programs not achieve an 85% success rate, the permittee must comply with all directives of the Division's BCE & FS to assure that the 85% rate is attained by the permittee.

11. The permittee has proposed three (3) alternative construction methods (Timber Matting, Temporary Trestle, and Flotation Channel) for the construction of the Broad Thorofare Bridge. Should the NJDOT contractor utilize the Flotation Channel Method, the Channel must be backfilled as per the U.S. Army Corps of Engineers permit conditions.

12. The eleven (11) drainage outfalls must have oil/grease/sedimentation control units incorporated within their systems, which must be serviced periodically.

13. Failure to comply with the above Conditions, including the stated deadline, would be considered a violation of N.J.S.A. 12:5–3 and/or N.J.S.A. 13:9A–1. Should noncompliance with any Condition occur, the permittee will be issued a stop work order with possible suspension and renovation of the permit and may be assessed the penalties provided for by existing Statutes.

14. All modifications to the approved plans must be reviewed and approved by this Division prior to the implementation of the modification by NJDOT

and/or their contractors. Failure to receive Division approval prior to implementation of any modification would be considered a violation of N.J.S.A. 12:5–3 and/or N.J.S.A. 13:9A–1 with the same consequences listed in Condition No. 13.

On the return day of the order to show cause defendants then adopted a new position, asserting that condemnation should be precluded unless it could be shown that plaintiff had met, or would probably meet, all of the conditions set forth in the DEP permit. Defendants offered no legal authority in either their 1½ page "letter in lieu of a more formal brief" or at oral argument to support the asserted proposition.

Because defendants challenge the authority of plaintiff to condemn, this issue must be resolved before any further proceedings may occur. *Bridgewater Tp. v. Yarnell,* 64 *N.J.* 211, 214 (1974); *State v. New Jersey Zinc Co.,* 40 *N.J.* 560, 572 (1963); *State v. Orenstein,* 124 *N.J.Super.* 295, 298 (App.Div. 1973); *State v. Applegate,* 107 *N.J.Super.* 159 (App.Div.1969); *N.J.S.A.* 20:3–11.

■■ Great discretion is accorded bodies endowed by the Legislature with the right of eminent domain. A determination that it is necessary, useful and suitable to acquire property by condemnation or a decision as to the quantity of land to be taken, its location and the time of the taking is within the scope of that discretion and is conclusive in the absence of fraud, bad faith, manifest abuse of power or arbitrary and capricious action. *In re East Windsor Mun. Util. Auth. v. Shapiro,* 57 *N.J.* 168, 169 (1970), *cert.* den. 401 *U.S.* 1010, 91 *S.Ct.* 1256, 28 *L.Ed.*2d 546 (1971); *Wes Outdoor Advertising Co. v. Goldberg,* 55 *N.J.* 347, 353 (1970); *Texas East. Trans. Corp. v. Wildlife Preserves, Inc.,* 48 *N.J.* 261, 269 (1966), aff'd on reh'g 49 *N.J.* 403 (1967); *Burnett v. Abbott,* 14 *N.J.* 291, 294 (1954); *Ocean County v. Stockhold,* 129 *N.J.Super.* 286, 290 (App.Div.1974), certif. granted 66 *N.J.* 320 (1974); *State v. Buck,* 94 *N.J.Super.* 84, 89 (App.Div.1967), certif. den. 49 *N.J.* 359 (1967), app. dism. 389 *U.S.* 571, 88 *S.Ct.* 693, 19 *L.Ed.*2d 780 (1968); *Essex County v. Hindenlang,* 35 *N.J.Super.* 479, 492 (App.Div.1955),

app. dism. 24 *N.J.* 517 (1957). With respect to claims of fraud, bad faith, abuse or arbitrary and capricious action, the burden of proof is upon the party asserting such. *Texas East. Trans. Corp., supra,* 48 *N.J.* at 275–276; *State v. Totowa Lum. & Sup. Co.,* 96 *N.J.Super.* 115, 124 (App.Div.1967); *Hindenlang, supra,* 35 *N.J.Super.* at 492.

Defendants have made no such showing nor have they offered any authority for the proposition that condemnation proceedings should be precluded by the circumstances existent here.

An issue with respect to the need to obtain approvals subsequent to condemnation proceedings was raised in *N.J. Highway Authority v. Currie,* 35 *N.J.Super.* 525 (App.Div.1955). The highway authority sought to condemn a tract of land for various purposes, included among which were the following uses: use as a spoil area; protection of the causeway; maintenance, storage and parking areas, and use for recreational facilities. *Id.* at 533. Defendant argued and the authority conceded that if the land were to be taken solely for use as a spoil area, a mere easement would have been sufficient, and the condemnation of a larger amount of land would not be justified. *Ibid.* The court, however, cited the multiple uses proposed by the authority as justification that the taking was not excessive. *Id.* at 534. Defendant then argued that such other uses could not be effected without first obtaining approval of the department of conservation and economic development, pursuant to the then applicable statutes *N.J.S.A.* 27:12B–3(d) and –5. The court, while recognizing that appropriate approval would be required at some future point, nevertheless rejected the argument that such was a bar to the plaintiff's proceeding with its condemnation action. *Currie, supra,* 35 *N.J.Super.* at 534.

Thereafter, a similar argument was raised in *N.J. Turnpike Authority v. Sisselman, et al.,* 106 *N.J.Super.* 358 (App.Div. 1969). The turnpike authority instituted condemnation proceedings to acquire two parcels of land for construction of two

bridges. Federal law required acquisition of a permit prior to commencement of construction. The property owner asserted the failure to acquire the permit as a defense to the condemnation proceedings. The trial court rejected that position, holding that the failure to obtain the permit did not mandate dismissal of the condemnation action. Thereafter an appeal was taken. Between the time of the trial court's decision and the affirmance by the Appellate Division, the turnpike authority obtained the necessary permit, subject to certain conditions. The Appellate Division noted the conditions, but nevertheless found no reason to upset the trial court's determination. *Id.* at 365.

These decisions are in accord with those of other jurisdictions which have also considered the issue. In each of the following cases courts have held that the necessity to obtain some form of subsequent governmental approval or to fulfill a subsequent condition was not a defense to a condemnation action. *United States v. 178.15 Acres of Land, More or Less,* 543 *F.*2d 1391 (4 Cir.1976) (requirement for filing of an environmental impact statement); *Harmon v. Phillips Petroleum Co.,* 555 *F.Supp.* 447 (D.Mont.1982) (necessity to obtain a certificate of public convenience and necessity); *Order of Friars Minor of the Province Of The Most Holy Name v. Denver Urban Renewal Authority,* 186 *Colo.* 367, 527 *P.*2d 804 (Sup.Ct.1974) (requirement for comment by advisory council on historic preservation); *Chambers v. Public Service Company of Indiana,* 265 *Ind.* 336, 355 *N.E.*2d 781 (Sup.Ct.1976) (necessity for government approval for construction of nuclear generating facility); *In re Certain Parcels of Land,* 420 *Pa.* 295, 216 *A.*2d 769 (Sup.Ct. 1966) (necessity for a redevelopment contract); *In re Condemnation of 1.6 Acres of Land,* 20 *Pa.Commw.* 419, 342 *A.*2d 142 (Commw.Ct.1975) (requirement for school district to obtain approval by department of education); *City of Bristol v. Horter,* 73 *S.D.* 398, 43 *N.W.*2d 543 (Sup.Ct.1950) (necessity to obtain approval of State Board of Health); *Falkner v. Northern States Power Co.,* 75 *Wis.*2d 116, 248 *N.W.*2d 885 (Sup.Ct.1977)

(requirement to obtain a certificate of public convenience and necessity).

In *Sellors v. Concord,* 329 *Mass.* 259, 107 *N.E.*2d 784 (Sup. Jud.Ct.1952), the Supreme Judicial Court of Massachusetts placed the issue in perspective, stating:

> ... That a possibility exists that the land may not be devoted to the proposed uses cannot be denied. But in the absence of evidence that the town cannot reasonably expect to achieve its public purposes, we cannot deny its right to take land by eminent domain. Obviously in the carrying out of the projects contemplated by the town many steps must be taken, and they cannot all be taken at once. The town would hardly be in a position to ask the board of appeals for permission to use the land for municipal purposes before it had acquired the land. It would have to appropriate funds for the construction of the proposed buildings. And, conceivably, it might have to borrow money and issue bonds for this purpose. Very likely the services of an architect would be required and authority to employ him would be necessary. Perhaps building permits would also be required. It is possible, therefore, that the proposed buildings might never be built because of the failure of the town to obtain or grant authority with respect to one or more of these matters. But it would be unreasonable to hold that the town could not exercise the power of eminent domain until all steps necessary to the carrying out of the projects had been taken. [107 *N.E.*2d at 786]

Defendants in response to the order to show cause have failed to offer any evidence that plaintiff cannot reasonably expect to achieve the public purpose for which it seeks to condemn the property herein. In circumstances such as this, where there is no genuine issue as to any material fact, judgment as a matter of law is required. *Ocean County v. Stockhold, supra,* 129 *N.J.Super.* at 290; *R.* 4:67–5.

As an additional defense defendants also assert that plaintiff should be estopped from exercising its power of eminent domain because of the State's failure to act upon Seaview's application for a road-opening permit. Prior to April 1985 Seaview expressed an intention to build a marina on property, a part of which is the subject matter of this action. It had obtained appropriate permits from the Army Corps of Engineers and the department of environmental protection, as well as approval by Egg Harbor Township. The approval by Egg

Harbor Township was subject to the condition that Seaview obtain a road-opening permit.

In April 1985 Seaview applied to the department of transportation for a temporary road-opening permit. No response to the application was forthcoming from the State. Although defendants offered no evidence that any steps were taken by them to challenge the inaction by the department of transportation, they now assert that such inaction is a basis to estop plaintiff from proceeding with this condemnation action.

The argument lacks merit. Whether a road-opening permit was or was not issued by plaintiff has no relationship to its power of eminent domain. Had the permit been issued, plaintiff would still be empowered to acquire the subject property by condemnation. The fact that Seaview's private interests may be subserved cannot defeat a condemnation proceeding. The controlling question is whether the taking of the land in question is in the public interest. *State v. Buck, supra,* 94 *N.J.Super.* at 88.

Estoppel may be used as a defense against the State to prevent "manifest wrong or injustice." *Environmental Protect. Dep't v. Ventron Corp.,* 182 *N.J.Super.* 210, 224 (App.Div. 1981), aff'd as mod. 94 *N.J.* 473 (1983); *In re Allstate Ins. Co.,* 179 *N.J.Super.* 581, 593 (App.Div.1981). The facts asserted by defendants here fail to rise to that level.

Plaintiff's application for an order appointing commissioners and adjudging that it has duly exercised its power of eminent domain is granted.