THE BOARD OF EDUCATION OF THE CITY OF ASBURY PARK, PLAINTIFF–RESPONDENT, CROSS–APPELLANT, v. THEODORE R. MURNICK, DEFENDANT–APPELLANT, CROSS–RESPONDENT, AND STATE OF NEW JERSEY, ACTING BY AND THROUGH JOHN P. RENNA, COMMISSIONER OF COMMUNITY AFFAIRS AND HIS SUCCESSORS AS THE CASE MAY BE, DEFENDANT, AND NEW JERSEY DEPARTMENT OF EDUCATION, INTERVENOR.

Superior Court of New Jersey
Appellate Division

Argued February 3, 1988—Decided April 12, 1988.

Before Judges FURMAN, LONG and SCALERA.

*Gita F. Rothschild* argued the cause for appellant, cross-respondent (*Waters, McPherson, McNeill, Fitzpatrick,* attorneys; *Jospeh G. Ragno,* on the brief).

*Peter P. Kalac* argued the cause for respondent, cross-appellant (*Kalac, Newman, and Lavender,* attorneys).

*Nancy Kaplan Miller* argued the cause for Intervenor, New Jersey Department of Education (*W. Cary Edwards,* Attorney General, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Nancy Kaplan Miller,* on the brief).

The opinion of the court was delivered by

LONG, J.A.D.

Two questions are presented on this appeal and cross-appeal: whether the pendency of an administrative agency proceeding on a required approval precludes the exercise of judicial jurisdiction in a condemnation case, and, if not, whether the exercise of jurisdiction by the court obviates the need for exhaustion of the administrative agency remedies. We answer both ques-

tions in the negative with the result that the case is affirmed in part and reversed and remanded in part.

Theodore Murnick is the owner of a 1.83 acre property located on Bond Street in Asbury Park which is the subject of this dispute. He acquired the property in December 1980 at a public auction sale and has since planned and prepared for the renovation and conversion of this building into a multi-family dwelling. He also owns the adjacent property, a high rise apartment complex known as Munroe Towers. On June 11, 1987, he obtained final site plan approval for this conversion.

In the interim, the Board of Education of the City of Asbury Park (school board) proposed to acquire and construct a public school facility for approximately 600 to 700 elementary students on the Bond Street site, as well as on adjacent properties. On July 9, 1985, the school board adopted a resolution which designated the Bond Street site as one of two proposed sites for a new school facility. The two sites were approved by the Bureau of Facility Planning Services in the Department of Education by letter dated October 2, 1985. Such approval was required under the then existing provisions of the New Jersey Administrative Code. *N.J.A.C.* 6:22–1.11(f). On October 8, 1985, the proposal was defeated by voter referendum.

On October 21, 1985, new regulations governing the approval of land acquisition for school purposes came into effect. These regulations continued the requirement of prior approval.

> No district board of education may conduct a referendum for land acquisition, secure board of school estimate approval, or enter into a lease agreement for land without prior approval of the Bureau of Facility Planning Services of the Department of Education. [*N.J.A.C.* 6:22–1.2(a)].

In addition, they set forth a comprehensive regulatory scheme of procedural and substantive requirements for such approval which had not existed under the earlier regulations, including the following:

> 4. A complete plot plan of the land to be acquired, showing topographical and contour lines, adjacent properties (on all sides), and access roads. The acreage and dimensions of the tract proposed for acquisition shall be included. In the application of the following standards for minimum acceptable school site sizes,

the bureau shall take into consideration the proximity and extent of non-school open land and availability of nearby athletic fields and parking areas; Standards for Minimum Acceptable School Site Sizes

District Population  Required Acres,  Base

| Density (Persons per Square Mile) | Elementary School | Middle School | High School |
|---|---|---|---|
| Below 500 | 10 | 20 | 30 |
| 500–1000 | 8 | 16 | 24 |
| 1001–5000 | 6 | 12 | 18 |
| 5001–10,000 | 4 | 8 | 12 |
| Above 10,000 | 2 | 4 | 6 |

Examples (Building Capacity)

| Added Acres/Each 100 Pupils | Elementary School (500) | Middle School (1000) | High School (1500) |
|---|---|---|---|
| 1.0 | 15 | 30 | 45 |
| 0.8 | 12 | 24 | 36 |
| 0.6 | 9 | 18 | 27 |
| 0.4 | 6 | 12 | 18 |
| 0.2 | 3 | 6 | 9 |

[*N.J.A.C.* 6:22–1.2(b)4]

After the defeat in the voter referendum, the school board considered alternative sites and in June 1986, selected the same two sites to be submitted as separate public referendum questions on October 7, 1986. The voters approved both sites. The school board did not request another site acquisition approval from the Bureau pursuant to *N.J.A.C.* 6:22–1.2, although, as has been noted, the regulation had changed after prior approval.

On November 13, 1986, Murnick submitted a request to Frank Johnson, the Manager of the Bureau of Facility Planning Services in the Department of Education for an informal hearing on the issue of the site plan approval, alleging that the previous approval was ineffective due to the subsequent substantive requirements of *N.J.A.C.* 6:22–1.2 and due to "substantially changed circumstances within the City of Asbury Park."

An informal hearing was held after which Johnson concluded that the 1985 approval was still valid because the plans were not altered and none of the contentions raised by Murnick were "sufficient" to cause a change in the site plan approval. Among other things, Johnson indicated that it has been the practice over several years to continue site plan approval without resubmission unless the scope was revised and that while Murnick's property does not meet the site size code requirements,[1] *N.J.A.C.* 6:22–1.7(b) authorizes a deviation. Murnick appealed this decision to the Commissioner, pursuant to *N.J.S. A.* 18A:6–9 which provides that the Commissioner shall have jurisdiction over controversies and disputes arising under the school laws. The matter was transferred to the Office of Administrative Law (OAL) as a contested case under *N.J.A.C.* 6:24–1.10.

On April 22, 1987, the school board began a condemnation proceeding by filing a Superior Court complaint seeking to acquire title to Murnick's property. Murnick answered, contesting the authority of the school board to condemn. On June 5, 1987, Murnick moved before Judge Milberg, pursuant to *N.J.S.A.* 20:3–11, for an order staying the condemnation proceedings until such time as the school board's authority to condemn could be resolved. His papers reflected that he had previously filed a petition with the Commissioner seeking an order declaring the school site approval null and void as in violation of *N.J.A.C.* 6:22–1.2, directing the school board to obtain site approval from the Bureau of Facility Planning Services in accordance with *N.J.A.C.* 6:22–1.2, and declaring that the school board is not authorized to acquire the site without such approval.

---

[1]Murnick claims that the new regulations require a lot size of 3.4 acres for the proposed 700 pupil school. Johnson testified at a later hearing that the required lot size would be 6 + acres. As has been noted, Murnick's property is 1.83 acres.

Judge Milberg entered an order fixing a plenary hearing on the issue of the school board's authority to condemn and staying proceedings until such time. Thereafter, Murnick submitted a letter brief to the trial judge, Judge Ricciardi, seeking a stay of the plenary hearing pending exhaustion of administrative remedies. Specifically, Murnick submitted that the Commissioner of Education has jurisdiction over the matter and that because the issue is properly before the Commissioner, the administrative remedy should be exhausted in order to avoid potentially "conflicting decisions" from the Commissioner and the courts. At that time, the hearing before the Commissioner was scheduled for July 1, 1987.

Judge Ricciardi heard oral argument on June 19, 1987. Over Murnick's objection, the Board presented three witnesses: Johnson, Milton G. Hughes, Monmouth County Superintendent of Schools, and Richard M. Kaplan, Director of the Department of Compliance of the Department of Education. Johnson reiterated his position as to the continuing viability of the prior approval. He also stated that under the new regulations, the minimum site requirement was six + acres while the Murnick property only measures 1.83 acres. The other witnesses confirmed what is essentially conceded, that there is a critical shortage of adequate school facilities in Asbury Park and that substandard facilities plague the district. Murnick contends that the school board did not provide any notice that those expert witnesses would be called and that he should have been supplied with reports prior to the hearing. He did, however, cross examine them.

On July 6, 1987, Judge Ricciardi rendered an oral decision dismissing Murnick's objection to the school board's authority to condemn and directing the condemnation matter to proceed pursuant to *N.J.S.A.* 18A:20-4.2. Judge Ricciardi indicated that, under *N.J.S.A.* 20:3-5, he had jurisdiction to determine the authority to exercise the power of eminent domain and that *N.J.S.A.* 18A:6-9 does not preempt the court's jurisdiction:

> The ambiguous nature of the Commissioner's jurisdiction in the matter involved here, coupled with the clear jurisdictional authority in the court leads me to conclude that the legislative purpose was to vest the full authority in the court to decide the full issue that is before us here, to wit: the authority to condemn.

On the issues of exhaustion of administrative remedies, the judge indicated that the preference for exhaustion is one of convenience, and not an indispensable precondition, *(Abbott v. Burke,* 100 *N.J.* 269, 297–298, 495 A.2d 376 (1985)), and that the instant matter is not one requiring "specialized educational expertise," especially in light of the "overriding public interest calling for a prompt judicial decision."

On the same day, the school board filed a Declaration of Taking and deposited in court an amount of money estimated to be the fair market value of the property. Murnick appealed. Judge Milberg granted a stay of further condemnation proceedings pending disposition of the appeal. The school board has challenged that order on the cross appeal.

Meanwhile, the school board moved for a summary dismissal before the Administrative Law Judge (ALJ). On September 18, 1987, the ALJ rendered an initial decision recommending dismissal of the Petition of Appeal for lack of subject matter jurisdiction because the Superior Court had exercised jurisdiction over the same dispute. He concluded that "summary decision on the merits should be entered on behalf of the Board and the Department through application of the doctrine of collateral estoppel." In October 1987, after an independent review of the record, the Commissioner of Education adopted the findings and conclusions of the ALJ dismissing the petition. The Commissioner of Education had previously intervened in this appeal which has been accelerated.

■ We have little difficulty with the trial judge's conclusion that he was empowered to proceed with the condemnation case. Jurisdiction over condemnation proceedings resides in the court,

and failure to obtain required governmental approvals is ordinarily not a defense to a condemnation action even if such approval will ultimately be necessary. *N.J. Highway Authority v. Currie*, 35 *N.J.Super.* 525 (App.Div.1955) (plaintiff had not obtained the approval of the Department of Conservation and Economic Development); *N.J. Turnpike Authority v. Sisselman et al.*, 106 *N.J.Super.* 358 (App.Div.1969), certif. den. 54 *N.J.* 565 (1969), (plaintiff failed to obtain a permit required under federal law); *State v. Malibu Beach, Inc.*, 209 *N.J.Super.* 291 (Law Div.1986), (plaintiff had not complied with conditions of environmental agencies). See also *In re Condemnation of 1.6 Acres of Land*, 20 *Pa.Commw.* 419, 342 *A.*2d 142 (Commw.Ct.1975).

■ We recognize that *N.J.A.C.* 6:22–1.2(a) precludes any action in furtherance of land acquisition *prior* to approval by the Bureau of Facility Planning Services. In the face of that regulation, if no approval at all had been obtained here, the condemnation case could not have proceeded because of the clear language of this regulation which differs sharply from the statutes and regulations considered in *Currie, Sisselman, Malibu Beach, and 1.6 Acres, supra*. However, the school board has overcome this procedural bar here because it acted under a colorable claim of approval—the prior approval by the Bureau which it contends continues in effect. Whether the prior approval is, in fact, sufficient in light of the subsequent changes in the regulations is a question for the Commissioner in the first instance.

This brings us to the fly in the ointment—the Commissioner's decision dismissing Murnick's petition. No appeal to us has been taken from that decision. The reason for this is that the matter is pending before the State Board. At oral argument we expressed our concern over the fact that the administrative dismissal, which is an integral part of Murnick's appeal, is not

technically before us. At that time, the Deputy Attorney General, acknowledging the difficult posture of the case, conceded this jurisdictional issue and represented to us that if we were to declare the need for the administrative process to go forward, it would proceed without the requirement of a separate appeal. We do so declare.

■ In our view, the trial judge erred on this issue when he concluded that the Commissioner's jurisdiction over site acquisition is "ambiguous" and that the issue is not one requiring "specialized educational expertise." Likewise, the Commissioner erred in deferring to the trial judge on this point. The question of whether Murnick's property is an appropriate school site and whether it was properly approved for that purpose is one which arises under the school laws and falls within the scope of the Commissioner's special expertise. Murnick's property is considerably smaller than the size requirements contained in the regulations promulgated by the State Board of Education. We assume that the size requirements were made a part of those regulations as a result of thoughtful deliberations by the State Board and that the State Board considered site size to impact on educational quality. Indeed, while the Board provided a waiver procedure in the regulations for variations in school buildings (*N.J.A.C.* 6:22–1.7(b)), it does not appear to have provided for such a waiver as to site size, thus underscoring its view of the significance of that requirement. It is evident to us that if a major variation from the requirement is to be allowed, it is for the Commissioner to make that essential educational determination in the first instance. This is especially true in view of the fact that inadequate and substandard facilities is one reason for the crisis situation existing in Asbury Park. The Commissioner cannot abdicate his responsibility to decide the important school law issue here involved simply because the trial judge has exercised his jurisdiction in condemnation.

On the other hand, although the issue of the fitness of Murnick's premises for school purposes must still be addressed by the Commissioner, we will honor the well established principle that the proceedings in condemnation should not be held in abeyance pending exhaustion of administrative remedies challenging required site approval. *See United States v. 178.15 Acres of Land, More or Less,* 543 *F.*2d 1391 (4 Cir.1976) (requirement for filing of an environmental impact statement); *Harmon v. Phillips Petroleum Co.,* 555 *F.Supp.* 447 (D.Mont. 1982) (necessity to obtain a certificate of public convenience and necessity); *Order of Friars Minor of the Province of that Most Holy Name v. Denver Urban Renewal Authority,* 186 *Colo.* 367, 527 *P.*2d 804 (Sup.Ct.1974) (requirement for comment by advisory council on historic preservation); *Chambers v. Public Service Company of Indiana,* 265 *Ind.* 336, 355 *N.E.*2d 781 (Sup.Ct.1976) (necessity for government approval of construction of nuclear generating facility); *In re Certain Parcels of Land,* 420 *Pa.* 295, 216 *A.*2d 769 (Sup.Ct.1966) (necessity for a redevelopment contract); *In re Condemnation of 1.6 Acres of Land, supra,* (requirement for school district to obtain approval by department of education); *City of Bristol v. Horter,* 73 *S.D.* 398, 43 *N.W.*2d 543 (Sup.Ct.1950) (necessity to obtain approval of State Board of Health); *Falkner v. Northern States Power Co.,* 75 *Wis.*2d 116, 248 *N.W.*2d 885 (Sup.Ct.1977) (requirement to obtain a certificate of public convenience and necessity). Obviously, the Board condemns at its own risk under these circumstances and with the full understanding that it may ultimately be in the position of having purchased, with public funds, property of no value for school purposes. The better route may be to accelerate the proceedings in the Department of Education prior to finalizing the condemnation. But that is the school board's choice.

The other issues raised by Murnick do not warrant our intervention.

Affirmed in part; reversed and remanded in part.