**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3211-19

BOROUGH OF CARTERET,
a municipal corporation of
the State of New Jersey,

      Plaintiff-Respondent,

v.

THE CARTERET WAREHOUSE
CONDOMINIUM ASSOCIATION,
INC., c/o 14 BURMA ROAD
ASSOCIATES,

      Defendant-Appellant,

and

COLUMBIA BANK
FOUNDATION, INC., d/b/a
COLOMBIA BANK,
INVESTORS BANCORP, INC.,
d/b/a INVESTORS BANK, and
BANCORP OF NEW JERSEY,
INC., d/b/a BANK OF NEW
JERSEY,

      Defendants.

Argued November 9, 2021 – Decided November 29, 2021

Before Judges Mawla and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-8604-19.

Lisa E. Lomelo argued the cause for appellant (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC, attorneys; Stephen F. Hehl, of counsel; Lisa E. Lomelo, of counsel and on the briefs).

Jason M. Hyndman argued the cause for respondent (DeCotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Jason M. Hyndman, of counsel and on the brief).

PER CURIAM

Defendant The Carteret Warehouse Condominium Association, Inc., appeals from a March 11, 2020 order granting a judgment in favor of plaintiff Borough of Carteret, to exercise its eminent domain powers to acquire a strip of land on defendant's property. We affirm.

The land in question is part of a large lot subdivided in 1987, creating Lots 1 and 2, owned by defendant, and Lots 3.01, 3.02, and 4, owned by plaintiff. Plaintiff's lots are on the waterfront, which it developed into the Carteret Waterfront Park and Municipal Marina, opened in June 2019. The park does not front a public roadway, so access easements between public parking on the

roadway and the park were created during the subdivision process, permitting ingress and egress along the border of defendant's property.

This dispute arose because plaintiff sought to create an auxiliary parking lot on a portion of defendant's lot to supplement the park's existing public parking. In May 2019, plaintiff offered to acquire the .252 acre easement for $8,100, and included an appraisal and survey with metes and bounds explaining the valuation. Defendant's property manager rejected the offer, advising: "All four owners have received copies of the appraisal . . . . They have discussed the situation and have unanimously voted not to sell."

In July 2019, the Borough Council adopted an ordinance authorizing acquisition of the property through eminent domain. Plaintiff finalized the survey, which designated the property being acquired as 0.218 acres and adjusted its valuation accordingly to $7,500 pursuant to an updated appraisal completed in September 2019. On November 11, 2019, plaintiff served a formal written offer on defendant's registered agent. The offer letter advised plaintiff would initiate condemnation proceedings if no response was received within fourteen days. Defendant did not respond.

On December 27, 2019, Plaintiff filed a verified complaint and order to show cause against defendant. Defendant opposed the application and argued

the easement was unsafe because it was narrow and traversed by tractor trailers. Defendant attached an affidavit and traffic safety study by a professional engineer explaining the dangers to the public accessing the easement in vehicles and on foot. Defendant also argued plaintiff failed to engage in bona fide negotiations before filing the complaint because it "presented one offer that was rejected." It alleged plaintiff did not act in good faith because it served the registered agent with a lower offer than the one sent to the property manager, and served "a [single] unit owner that cannot unilaterally act on behalf of [defendant]." Defendant argued the taking was arbitrary and capricious, and that discovery was necessary to explore the reasons for the acquisition, traffic and safety concerns, and the valuation process.

The trial judge heard oral argument on the order to show cause. Addressing whether defendant received notice of plaintiff's $7,500 offer, defendant's counsel conceded "notice is essentially not the issue." Counsel also conceded defendant did not respond to the $7,500 offer, and argued plaintiff had "to show an intent to negotiate[,]" which plaintiff failed to do by not responding to the property manager's rejection of the $8,100 offer. Counsel addressed the safety concerns and argued defendant would be responsible for anyone injured on its property because plaintiff had tort claims immunity. Defendant argued a

4

plenary hearing was necessary to address these issues and the legality of the taking.

The trial judge concluded plaintiff did not act arbitrarily or capriciously, noting the expansion of the parking is part of plaintiff's "continuing development" of the property and "a reasonable decision by the [borough] council to make." The judge rejected defendant's argument regarding the alleged safety considerations noting "[t]he question is, at this stage . . . is the decision to identify this piece of property for potential taking arbitrary and capricious?" The judge concluded the safety issues would be addressed during the property's development and entered the March 11, 2020 order in plaintiff's favor. The order granted plaintiff the right to acquire the property through eminent domain, appointed commissioners to examine and appraise the property, and assess damages as a result of the taking and condemnation. The court also stayed the action for thirty days so the parties could negotiate for the voluntary transfer of the property, and for other relief not relevant to this appeal.

I.

Condemnation actions are summary. R. 4:73-1. In a summary action, if "the affidavits show palpably that there is no genuine issue as to any material fact, the court may try the action on the pleadings and affidavits, and render final

5

judgment thereon."  R. 4:67-5.  A condemnation complaint must include "the amount of compensation offered by the condemnor and a reasonable disclosure of the manner in which the amount has been calculated."  R. 4:73-1.  Further, the rule requires the complaint to also include details such as a "map and a description of the land to be acquired" and a "breakdown" of the methodology employed to reach the amount of the offer.  Ibid.  "The condemnation rules generally follow the requirements of the Eminent Domain of 1971 Act [N.J.S.A. 20:3-1 to -50]."  Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:73-1 (2022).

Pursuant to the Act, our "Legislature has delegated broad authority to municipalities to acquire private property by eminent domain for public uses . . . ."  Twp. of Readington v. Solberg Aviation Co., 409 N.J. Super. 282, 310 (App. Div. 2009) (quoting Deland v. Twp. of Berkeley Heights, 361 N.J. Super. 1, 19 (App. Div. 2003)).  We do not interfere with the exercise of eminent domain unless it is unreasonable and arbitrary.  State by McLean v. Lanza, 27 N.J. 516, 530 (1958); see also Twp. of W. Orange v. 769 Assocs., LLC, 172 N.J. 564, 571 (2002) ("It is well-established that a reviewing court will not upset a municipality's decision to use its eminent domain power 'in the absence of an affirmative showing of fraud, bad faith or manifest abuse.'" (quoting City of

Trenton v. Lenzner, 16 N.J. 465, 473 (1954))). "[T]he location [of the property] is a matter within the discretion of the condemnor." Tex. E. Transmission Corp. v. Wildlife Press., 48 N.J. 261, 269 (1966); accord State v. Trap Rock Indus. Inc., 338 N.J. Super. 92, 102 (App. Div. 2001). Our courts therefore grant "wide latitude" to municipalities in condemnation proceedings. Readington, 409 N.J. Super. at 310 (quoting W. Orange, 172 N.J. at 572).

"[T]he burden of proof is upon the party asserting" a claim of "fraud, bad faith, abuse or arbitrary and capricious action[.]" State by Comm'r of Transp. v. Malibu Beach, Inc., 209 N.J. Super. 291, 296 (Law Div. 1986). The property owner must prove the claim by clear and convincing evidence. Readington, 409 N.J. Super. at 311.

"We review the court's findings as if they were made after a summary judgment motion." In re Estate of Baker, 297 N.J. Super. 203, 207 (App. Div. 1997). However, "a party is not entitled to favorable inferences such as are afforded to the respondent on a summary judgment motion . . . ." Grabowsky v. Twp. of Montclair, 221 N.J. 536, 549 (2015) (citations omitted).

II.

In Points I and II, defendant argues the trial judge was required to hold a plenary hearing because there were disputes in fact as to whether plaintiff served

7

the offer and negotiated in good faith, the condemnation was arbitrary, or if there were safety issues concerns related to the taking. We disagree.

The Act requires a condemnor to engage in "bona fide negotiations with the prospective condemnee[.]" N.J.S.A. 20:3-6. The negotiations must be in writing and the offer must include details such as a description of the property, the interest acquired, the compensation being offered, and a methodology of calculation of same. Ibid. The condemnee must reject or accept the offer no "less than [fourteen] days from the mailing of the offer." Ibid.

N.J.S.A. 46:8B-25 pertains to service of notice of a condemnation on condominium associations and states: "If all or any part of the common elements shall be taken, injured or destroyed by eminent domain, each unit owner shall be entitled to notice of such taking and to participate through the association in the proceedings incident thereto." (emphasis added). Once service is effectuated, "the condemning authority has no obligation to continue to negotiate if the other party refuses to do so." Borough of Merchantville v. Malik & Son, LLC, 218 N.J. 556, 573 (2014) (citing Cnty. of Monmouth v. Whispering Woods, 222 N.J. Super. 1, 9 (App. Div. 1987)).

We reject defendant's argument a plenary hearing was required to address whether plaintiff properly served its offer and negotiated in good faith.

Defendant's counsel conceded service was not the problem. Service was effectuated because defendant's property manager acknowledged receipt of the initial offer and plaintiff served the formal offer on defendant's registered agent, constituting valid service pursuant to N.J.S.A. 46:8B-25.

We are convinced both plaintiff's offers were in good faith and that defendant rejected them without engaging in bona fide negotiations. The trial judge's rulings in this regard are unassailable, and defendant's arguments to the contrary lack merit. See R. 2:11-3(e)(1)(E). Defendant's argument the verified complaint was unclear as to the taking also lacks merit because the complaint attached a survey of the taking area and a metes and bounds description.

Defendant's argument a hearing was necessary to address safety and liability issues also fails. Plaintiff cannot assert immunity from negligence claims arising from its operation or maintenance of a public parking lot. See N.J.S.A. 40:60-25.5.

Further, the trial judge correctly held the alleged safety issues did not bar granting the order to show cause because they were not considered at the initial stages of the proceedings, and would instead be resolved during development. See N.J.S.A. 20:3-8 and R. 4:73-1. In Malibu Beach, we held even the failure to obtain the appropriate permits for the property prior to filing the order to show

cause did not bar condemnation. 209 N.J. Super. at 296-98 (citing N.J. Highway Auth. v. Currie, 35 N.J. Super. 525, 534 (App. Div. 1955) (holding a plaintiff was not required to preemptively obtain the permit to properly proceed with a condemnation claim)). Plaintiff was not required to provide a fully detailed plan of development at this stage in the litigation.

Defendant's reliance on Texas Eastern is likewise misplaced. There, the plaintiff sought to condemn four tracts of land for its gas pipeline across property maintained by the defendant. 48 N.J. at 265. The defendant alleged the condemnation was arbitrary because the plaintiff refused to consider an alternate route for the pipeline that would "greatly reduce or largely eliminate" the damage to its property. Id. at 269. The Supreme Court held the defendant made a prima facie case the condemnation was arbitrary by producing two expert reports positing an alternate route for the pipeline along an already-existing public utility easement. Id. at 272. The Court remanded for a plenary hearing, holding:

> the ultimate burden of proving arbitrariness in the choice of route will be on [defendant]. Procedurally, however, if it introduces reasonable proof of (1) the serious damage claimed to result from installation of the pipeline on the path chosen by plaintiff, and (2) an apparently reasonably available alternate route or routes, which will avoid the serious damage referred to,

10

the burden of going forward with the evidence will shift to plaintiff.

[Id. at 275.]

Here, the trial judge did not err in declining to hold a hearing to address the safety issues raised by defendant because the harm alleged was to the public, not defendant or its property. Moreover, defendant did not demonstrate a reasonable alternative to condemnation. Indeed, the condemned property was not only an expansion of existing public parking, but also a means to access the waterfront park. A hearing was unnecessary because defendant did not make out a prima facie case of arbitrariness.

III.

Finally, we reject defendant's argument that the trial court erred by not dismissing plaintiff's complaint and by staying the appointment of commissioners for thirty days so the parties could negotiate a resolution. We have held that a stay of condemnation proceedings to enable a condemnor to cure deficiencies after commencing the condemnation proceedings frustrates the purpose of N.J.S.A. 20:3-6, which must be strictly construed. Borough of Rockaway v. Donofrio, 186 N.J. Super. 344, 354 (App. Div. 1982). This is because "the purpose of the Legislature in enacting N.J.S.A. 20:3-6 was . . . to encourage entities with condemnation powers to make acquisitions without

litigation.  Such a procedure thereby saves both the acquiring entity and the condemnee the expenses and delay of litigation."  Id. at 353-54.

A thorough review of the trial transcript here reveals the judge stayed the order not to enable plaintiff to cure deficiencies in its application, but to allow the parties the ability to resolve the matter without litigation.  The judge's decision was consonant with the Legislative intent, and dismissal of the complaint was unwarranted.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3211-19